# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| CH ROBINSON WORLDWIDE, INC., | Case No. 19-CV-2292 (NEB/TNL) |
| Plaintiff, | |
| v. | ORDER ON MOTION TO DISMISS |
| HOUSE OF THALLER, INC., JOHN THALLER, WES THALLER, and JORDAN THALLER, | |
| Defendants. | |

CH Robinson Worldwide, Inc. ("CHR") has sued House of Thaller, Inc. ("HoT"), as well as John Thaller, Wes Thaller, and Jordan Thaller (collectively, the "Thallers"), asserting various common law claims. The Thallers have moved to dismiss the claims against them. Because the Court lacks personal jurisdiction over the Thallers, the Court grants their motion to dismiss.

## BACKGROUND

The Court draws the following background from the affidavits and other evidence adduced by parties in support of their positions, drawing all reasonable inferences in CHR's favor. *Creative Calling Solutions, Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) ("[W]here . . . the parties submit affidavits to bolster their positions on [a] motion [to dismiss for lack of personal jurisdiction], and the district court relies on the evidence,

the motion is in substance one for summary judgment."); *accord Pederson v. Frost*, -- F.3d --, No. 18-3195, 2020 WL 1144609, at *1 (8th Cir. Mar. 10, 2020).

CHR provides transportation and logistics services to its customers. [ECF No. 18 ("Martland Decl.") ¶ 2.] CHR is headquartered in Minnesota, but also maintains offices throughout the United States, including an office in Tennessee. (*See id.*) HoT, one of CHR's customers, is a Tennessee corporation that used to manufacture food products. [ECF No. 7 ("John Thaller Decl.") ¶¶ 3, 5.] Since 2014, CHR has arranged for more than 16,500 shipments of HoT's products to be delivered to HoT's customers across the United States. (Martland Decl. ¶ 5.) Nearly 300 of those shipments were delivered to Minnesota. (*Id.*)

*Jordan Thaller*. Jordan worked for HoT from 2010 until it ceased operations in May 2019. [ECF No. 9 ("Jordan Thaller Decl.") ¶ 3.] Jordan was CHR's main contact at HoT. [ECF No. 21 ("2d Jordan Thaller Decl.") ¶ 2.] He has never been an owner or shareholder of HoT. (Jordan Thaller Decl. ¶ 5.) Jordan is a Tennessee resident, and when he communicated with CHR, he did so mostly with employees working out of CHR's Tennessee office. (*Id.* ¶¶ 2, 9.) The Tennessee office handled all issues relating to HoT's account with CHR, including scheduling, damage claims, load planning, payments, and tracking shipments. (2d Jordan Thaller Decl. ¶ 3.) Jordan, as the main contact with CHR, placed orders through CHR's Tennessee office, discussed invoicing issues with CHR's Tennessee office, and submitted damages claims to CHR's Tennessee office. (*Id.* ¶¶ 4–6.)

*John Thaller.* John, HoT's President, has been a shareholder and owner of HoT since 1964. (John Thaller Decl. ¶ 4.) John is a Tennessee resident, and has never had any contact with CHR in Minnesota or with its Minnesota-based representatives. *(Id.* ¶¶ 2, 10). His only contact with CHR has been through CHR's representatives in Tennessee. *(Id.* ¶ 11.)

*Wes Thaller.* Wes, HoT's former Vice President, is a Tennessee resident and was a shareholder of HoT from 2010 to 2019. [ECF No. 8 ("Wes Thaller Decl.") ¶¶ 2, 3.] Wes cannot recall having any contacts with CHR's representatives in Minnesota. *(Id.* ¶¶ 2, 5.) He may have briefly met or communicated with CHR's Tennessee-based representatives when Jordan and John met with them in Tennessee. *(Id.)*

## I.      Complaint Allegations

In May 2019, HoT ceased operations, and its assets were acquired by Elevation Foods, LLC. [ECF No. 16 (the "Amended Complaint" or "AC") ¶ 12.] CHR's claims against the Thallers in the Amended Complaint revolve around HoT's past-due account at the time of the acquisition and alleged misrepresentations made by Jordan in the preceding months.

The Amended Complaint alleges that in 2019, HoT's account with CHR was past due, and thus CHR advised Jordan that it would stop providing services to HoT. *(Id.* ¶ 10.) Jordan then arranged a meeting with CHR's representatives to discuss HoT's account status. *(Id.)* At that meeting—held in Tennessee in March 2019—Jordan told CHR's representatives that John and Wes were in discussions with an equity investment

firm that was interested in purchasing HoT's assets. (*Id.*) In describing those discussions, Jordan told CHR's representatives that the prospective purchaser "was aware of the debt owed to CHR and had agreed that it would assume this liability." (*Id.*) Jordan then asked CHR to continue providing services to HoT "so as to maintain business operations until the [purchase of HoT] was completed[,] whereupon" the debt owed to CHR would be paid. (*Id.*) The Amended Complaint claims that Jordan repeatedly assured CHR that "as part of the terms and conditions of [the] contemplated transaction . . . [the purchaser] would pay the debt owed to CHR." (*Id.* ¶ 11.)

After Elevation Foods purchased HoT's assets on May 29, 2019, CHR learned that Elevation Foods had not in fact assumed the CHR debt. (*Id.* ¶¶ 12–13.) When CHR's representatives contacted Jordan, Jordan allegedly "promptly apologized for lying and blamed John and Wes." (*Id.*) The Amended Complaint further alleges that HoT "was insolvent, or on the verge of insolvency, when it ordered [] services from CHR from October of 2018 through May of 2019." (*Id.* ¶ 15.) It pleads that, as a result of the actions of the Thallers and HoT, CHR suffered damages. (*Id.* ¶¶ 8, 20.)

## II.     Procedural History

CHR sued HoT and the Thallers in Minnesota state court. CHR's original complaint alleged that the Thallers "knowingly and intentionally" ordered logistics-related services from CHR when HoT "was insolvent or on the verge of insolvency and was not sufficiently capitalized to undertake these transactions." [ECF No. 1-1 ¶ 3.] CHR

claims damages in excess of $847,588.56. (*Id.*)

In June 2019, CHR served its complaint on Jordan. (*See id.*) On July 2, 2019, Jordan served an answer, asserting affirmative defenses, including that the court lacked personal jurisdiction over him. [ECF No. 1-2.] John and Wes accepted service of the complaint on July 29, 2019. [ECF Nos. 1-3, 1-4.]

John and Wes then removed the action to this Court, with Jordan's consent, asserting diversity jurisdiction under 28 U.S.C. § 1332. [ECF No. 1.] HoT has not appeared in the action. In August 2019, the Thallers filed this motion to dismiss the claims against them. [ECF No. 5.] On September 20, 2019, CHR filed the Amended Complaint, naming the Thallers as defendants in three counts: "misrepresentation and fraud," "breach of fiduciary duty to creditor of insolvent corporation," and "veil piercing." (AC ¶¶ 32–47 (Counts 4–6).)

## ANALYSIS

### I. Personal Jurisdiction

#### A. *Motion to Dismiss/Amended Complaint*

As a threshold matter, the Court notes that filing an amended complaint ordinarily moots a defendant's motion to dismiss. *Onyiah v. St. Cloud State Univ.*, 655 F. Supp. 2d 948, 958 (D. Minn. 2009). But "a defendant need not file a new Rule 12 motion merely because the plaintiff amended his pleading while the defendant's motion was pending." *DeVary v. Countrywide Home Loans, Inc.*, 701 F. Supp. 2d 1096, 1100 (D. Minn. 2010). "If

some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading." *Bishop v. Abbott Labs.*, No. 19-CV-420 (NEB/ECW), 2019 WL 6975449, at *3 (D. Minn. Dec. 20, 2019) (quoting 6 Charles Alan Wright, et al., Federal Practice and Procedure § 1476 (3d ed. 2019)).

The circumstances here make ruling on the Thallers' Rule 12 motion appropriate. In their reply, the Thallers make plain that they believe that the allegations in the Amended Complaint remain insufficient to confer personal jurisdiction over them. [ECF No. 20 at 1–2.] As discussed further below, this Court agrees, and therefore will consider the Thallers' motion as being addressed to the Amended Complaint.

The Court also rejects CHR's contention that Jordan's answer in state court renders his Rule 12(b) motion procedurally improper. In state court, Jordan properly preserved lack of personal jurisdiction as an affirmative defense. [ECF No. 1-2 ¶ 36]; *see also* Minn. R. Civ. P. 12.02; Minn. R. Civ. P. 12.08; *Juelich v. Yamazaki Mazak Optonics Corp.*, 670 N.W.2d 11, 17 (Minn. Ct. App. 2003) (finding no waiver of personal jurisdiction when defense asserted first in answer and again in motion to dismiss filed a year later). It is therefore also properly preserved for purposes of a Rule 12(b) motion filed in federal court after removal. *Nationwide Eng'g & Control Sys., Inc. v. Thomas*, 837 F.2d 345, 348 (8th Cir. 1988) ("Upon removal, a defendant may assert any defense that would have been available to him in state court and which has not been lost through the operation of either

[Rule] 12(g) or 12(h).").  Thus, Jordan's Rule 12(b) motion to dismiss for lack of personal jurisdiction, which this Court construes to address the Amended Complaint, is procedurally proper.

### B.    Legal Standard

Rule 12(b)(2) of the Federal Rules of Civil Procedure permits a party to move to dismiss a claim asserted against him for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). The parties have submitted declarations to bolster their positions with respect to personal jurisdiction. [*See* ECF Nos. 7–9, 18, 19, 21.] The motion is therefore "in substance one for summary judgment" on the narrow issue of the Court's authority to exercise jurisdiction over the Thallers. *Creative Calling Solutions*, 799 F.3d at 979.

"The plaintiff bears the burden of proof on the issue of personal jurisdiction." *Id.* "[T]he [claims] should not be dismissed . . . if the evidence, viewed in the light most favorable to [the plaintiff], is sufficient to support" the exercise of jurisdiction over the defendants. *Id.* "A federal court in a diversity action may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004) (quoting *Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1280 (8th Cir. 1991)). And "Minnesota's long-arm statute extends as far as the Constitution allows." *Federated Mut. Ins. Co. v. FedNat Holding Co.*, 928 F.3d 718, 720 (8th Cir. 2019). Thus, the two prongs of the analysis—whether jurisdiction is permitted by Minnesota's long-arm statute and the

Due Process Clause—are collapsed into a single due process inquiry. *Pederson*, 2020 WL 1144609, at *2. To comport with due process, a non-resident defendant must have sufficient contacts with the forum state such that exercising jurisdiction over him does not offend traditional notions of fair play and substantial justice. *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010).

The Eighth Circuit has set forth the following five-factor test to guide the due process inquiry:

> (1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

*Id*. (citation omitted). Of these, the first three are afforded greater weight. *Datalink Corp. v. Perkins Eastman Architects, P.C.*, 33 F. Supp. 3d 1068, 1073 (D. Minn. 2014).

There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., San Francisco County*, 137 S. Ct. 1773, 1780 (2017). CHR asserts that this Court has both general and specific jurisdiction over the Thallers. [*See, e.g.*, ECF No. 17 ("CHR Opp.") at 12.] For the reasons discussed below, the Court disagrees.

## C.     *General Jurisdiction*

"A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different [s]tate." *Bristol-Myers Squibb*, 137 S. Ct. at 1780 (emphasis in original). The Supreme Court has stressed that

"only a limited set of affiliations with a forum will render a defendant amenable to" general jurisdiction. *Id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). The "paradigm all-purpose forums" where a corporation is amenable to general jurisdiction are its place of incorporation and its principal place of business. *Daimler AG*, 571 U.S. at 137. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

There exists no basis to exercise general jurisdiction over the Thallers. They are all residents of Tennessee. They have submitted affidavits indicating that they have no regular contact with Minnesota and own no property in Minnesota. (Jordan Thaller Decl. ¶¶ 13, 15; John Thaller Decl. ¶¶ 14, 16; Wes Thaller Decl. ¶¶ 6–7.) CHR has adduced no evidence to the contrary. On this record, the Court concludes that it lacks general jurisdiction over the Thallers.

CHR does not appear to dispute the Thallers' lack of contacts with Minnesota. Rather, it argues that continuous and systematic contacts exist between HoT and Minnesota such that general jurisdiction over HoT would be proper. (CHR Opp. at 16–19.) The next logical step, according to CHR, is that HoT's contacts may be imputed to the Thallers, making general jurisdiction over the Thallers also proper. (*Id*. at 12–15.) This argument finds no support in the law or the record. Even if the Court were to conclude that HoT's contacts could be imputed to the Thallers—which it does not—it finds no basis

to exercise general jurisdiction over HoT. There is no dispute that HoT has never been incorporated in or had its principal place of business in Minnesota. So even if HoT's contacts could be imputed to the Thallers, these contacts are insufficient to establish general jurisdiction.[1]

## D.    *Specific Jurisdiction*

Specific jurisdiction, unlike general jurisdiction, may only be exercised where the suit arises out of or relates to the defendant's contacts with the forum. *Bristol-Myers Squibb*, 137 S. Ct. at 1780; *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 912 (8th Cir. 2012) ("Specific personal jurisdiction, unlike general jurisdiction, requires a relationship between the forum, the cause of action, and the defendant.").

Review of the claims asserted against the Thallers in the Amended Complaint and the affidavits and other exhibits submitted reveals the absence of suit-related contacts between the Thallers and Minnesota. The Amended Complaint does not plead that Jordan made any of his alleged misrepresentations in Minnesota. Even more stark, there is no indication that Jordan made any of these alleged statements in phone calls with or e-mails addressed to CHR's Minnesota-based representatives. The Amended Complaint

---

[1] The Supreme Court has declined to "foreclose the possibility that in an exceptional case . . . a corporation's operations in a forum *other* than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that [s]tate." *Daimler AG*, 571 U.S. at 139 n.19 (emphasis added). But contacts between HoT and Minnesota are so sparse that this is not near such an exceptional case.

is similarly devoid of any allegations that John or Wes directed Jordan's actions from Minnesota.

In assessing whether CHR can establish sufficient suit-related contacts to confer specific jurisdiction over the Thallers, the Court's approach is guided by the Eighth Circuit's reasoning in *Whaley v. Esebag*, 946 F.3d 447 (8th Cir. 2020), and *Pederson v. Frost*, -- F.3d --, 2020 WL 1144609 (8th Cir. Mar. 10, 2020). As the Eighth Circuit explained in *Whaley*, where a plaintiff's claims sound in intentional tort, courts must evaluate specific jurisdiction using the "effects test" the Supreme Court set forth in *Calder v. Jones*, 465 U.S. 783 (1984). *Whaley*, 946 F.3d at 451. Further, courts must focus on "contacts and conduct with the forum state *itself*, not the defendant's contacts with persons who reside there." *Id.* (citing *Walden v. Fiore*, 571 U.S. 277, 285 (2014)) (emphasis in original).

The void of suit-related contacts with Minnesota dooms CHR's attempts to establish specific jurisdiction over the Thallers. A comparison to *Whaley* and *Pederson* is instructive. In *Whaley*, the Eighth Circuit determined there were sufficient suit-related contacts between the defendant and the forum to establish specific jurisdiction. 946 F.3d at 453. The plaintiffs sued a California resident, Jimmy Esebag, as well as his California-based business, in Arkansas over an investment agreement. *Id.* at 449. The plaintiffs asserted causes of action for violations of the Securities Exchange Act, the California Corporations Code, fraud, unjust enrichment, and unfair competition. *Whaley v. Esebag*, No. 5:18-CV-05123, 2018 WL 4924025, at *1 (W.D. Ark. Oct. 10, 2018). Among other things,

they claimed that Esebag "stated an interest in working with the plaintiffs because of their experience working with Walmart, Inc., which has established its world headquarters in Bentonville, Arkansas," and "falsely represented that he would invest $20 million of his personal funds" when the dietary supplement he wished to market to Walmart, among others, was ready. *Whaley*, 946 F.3d at 449.

The Eighth Circuit concluded that the plaintiffs had established sufficient suit-related contacts between Esebag and Arkansas to satisfy the Eighth Circuit's due process inquiry. In particular, it noted that Esebag had traveled to Arkansas for two in-person meetings with the plaintiffs, at which time he made certain false statements and misrepresentations related to the dispute, that he sent "numerous calls, emails, texts, and text messages to the plaintiffs in Arkansas," that he "shipped samples of the [dietary supplement] and a sales pitch to Arkansas," and that he "made clear his desire to establish the relationship because of the plaintiffs' possible connections to Walmart," which is headquartered in Arkansas. *Id.* at 452. The Eighth Circuit reasoned that "[g]iven the plaintiffs['] ties to Walmart, it was evident that the prospect of doing business with Walmart was central to Esebag's interest in the relationship." *Id.* The Eighth Circuit determined that "Esebag's actions in and affecting Arkansas are central to the plaintiffs' allegations of fraud and misrepresentation, and they support a finding of specific jurisdiction." *Id.* at 453.

In *Pederson*, the Eighth Circuit concluded that the plaintiff failed to establish specific jurisdiction over the defendants due to the absence of suit-related contacts with Minnesota. 2020 WL 1144609, at *3. There, the plaintiff was a lawyer who sued non-resident corporations and their officers, alleging that he had been manipulated into representing one of the corporate defendants through false promises. *Id.* at *1. He first began his legal work for that defendant while he was resident in California. *Id.* He then moved to Minnesota, continued his work for the defendant, but quit when he discovered that one of its most promising investors had committed securities fraud. *Id.*

The Eighth Circuit concluded that the plaintiff had established insufficient suit-related contacts between the defendants and Minnesota to confer specific jurisdiction over them. *Id.* at *2–3. It was not enough that one of the defendants "transacted business within" Minnesota and that another operated in the state through a subsidiary, reasoning that "nothing suggests that these activities are related to [the plaintiff's] lawsuit." *Id.* at *2. It also concluded that, without any indication that the "hundreds of phone calls and emails related to" the plaintiff's work for the corporation he represented "were part of some broader effort by the defendants to create a connection with Minnesota," these, too, were insufficient to confer specific jurisdiction over the defendants. *Id.* Finally, the Eighth Circuit concluded that causing the plaintiff to suffer harm in Minnesota was insufficient to satisfy the requirements of due process because the defendants had done nothing to tether the effect of their actions to Minnesota. *Id.* at *3 (citing *Walden*, 571 U.S. at 290).

*Whaley* and *Pederson* provide recent support for the Court's conclusion that the record here is devoid of any contact between Minnesota and the Thallers relating to the causes of action asserted. Unlike the defendant in *Whaley*, there is no indication that the Thallers contracted with CHR because of any connection to Minnesota. Indeed, the record indicates that starting in 2014, CHR arranged more than 16,500 shipments to HoT's customers across the country and less than 300 of those were made to companies in Minnesota. (Martland Decl. ¶ 5.) And, like the defendants in *Pederson*, there is no indication that any of the Thallers met or otherwise communicated with CHR's Minnesota-based representatives about the dispute that is central to this case. To the contrary, the only communications the Thallers had with CHR's representatives regarding HoT's past-due account were with employees based in CHR's satellite office in Tennessee. (John Thaller Decl. ¶¶ 10–11; Wes Thaller Decl. ¶ 5; Jordan Thaller Decl. ¶¶ 9, 12.) Indeed, the record reveals even fewer contacts between the Thallers and Minnesota than the "hundreds of phone calls and emails" with the plaintiff that the Eighth Circuit deemed insufficient in *Pederson*. 2020 WL 1144609, at *2.

As a result, the first three factors—(1) the nature and quality of the contacts with the forum state, (2) the quantity of the contacts with the forum state, and (3) the relation of the cause of action to the contacts—weigh strongly against exercising specific

jurisdiction over the Thallers.[2] In these circumstances, specific jurisdiction has not been established.

### E. Specific Jurisdiction by Imputing HoT's Contacts to the Thallers

CHR next contends that this Court may exercise specific jurisdiction over the Thallers because HoT's suit-related contacts with Minnesota may be attributed to the Thallers. For the reasons discussed below, the Court disagrees.

Whether a federal court presiding over a diversity case may exercise vicarious personal jurisdiction over a defendant is a question of state law. *Finn v. Moyes*, No. 14-CV-1293 (JRT/TNL), 2017 WL 1194192, at *6 (D. Minn. Mar. 30, 2017). It is unclear whether Minnesota courts recognize vicarious jurisdiction over non-resident shareholders. *See id.* at *7 (noting Minnesota courts have not yet adopted the practice of exercising vicarious specific jurisdiction over shareholders under an alter-ego theory); *Stratasys, Inc. v. ProtoPulsion, Inc.*, No. A10-2257, 2011 WL 2750720, at *8 (Minn. Ct. App. July 18, 2011) ("Minnesota has not applied the principle of vicarious personal jurisdiction to establish personal jurisdiction over a dominant individual shareholder who is the alleged alter ego of a corporation."). But the Eighth Circuit has found that exercising personal jurisdiction over a non-resident shareholder who so controls and dominates the actions of its

---

[2] "Given [the] conclusion that the defendants do not have sufficient minimum contacts with Minnesota, the last two factors—the forum state's interest and the convenience of the parties—cannot themselves create personal jurisdiction." *Pederson*, 2020 WL 1144609, at *3 n.4.

company that the latter's separate corporate existence may be disregarded does not violate the requirements of due process. *See Lakota Girl Scout Council, Inc. v. Harvey Fund-Raising Mgmt., Inc.*, 519 F.2d 634, 637–38 (8th Cir. 1975) (applying Iowa law).

Assuming without deciding that Minnesota's long-arm statute confers jurisdiction over non-resident shareholders under a theory of vicarious personal jurisdiction, the Court turns to CHR's arguments seeking to establish specific jurisdiction over the Thallers on an alter-ego theory. Its analysis is guided by the Minnesota Court of Appeals' decision in *Stratasys, Inc. v. ProtoPulsion, Inc*, No. A10-2257, 2011 WL 2750720 (Minn. Ct. App. July 18, 2011). In *Stratasys*, the Court of Appeals concluded that the record did not support exercising personal jurisdiction over a dominant shareholder after considering whether the plaintiff had made a showing that the shareholder: (1) was the sole owner of the corporation; (2) completely controlled the corporation for his own purposes; (3) shared a business address with the corporation; (4) commingled personal finances with the corporation's finances; (5) personally guaranteed any of the corporation's debts; and (6) dominated and controlled the corporation, "using it as a conduit for personal business." 2011 WL 2750720, at *9. The *Stratasys* court placed particular emphasis on the final factor.

CHR has not made a sufficient showing to establish that HoT's contacts may be imputed to the Thallers. The record establishes that Jordan is not and never has been a shareholder of HoT and thus there is no basis to impute HoT's contacts to him. And the

record shows that neither John nor Wes was the sole shareholder of HoT. (John Thaller Decl. ¶¶ 4, 6.) The allegations in the Amended Complaint that parrot elements of Minnesota's test for alter-ego liability, are insufficient to establish vicarious personal jurisdiction over John and Wes Thaller. (*See, e.g.*, AC ¶ 18 ("[T]he Thallers treated HoT as a mere façade for their own individual dealings. During the time of period of the transactions that are the subject of this action, HoT was insolvent and insufficiently capitalized. The Thallers improperly siphoned monies and assets from HoT in order to personally enrich themselves.").) These conclusory allegations "lack the factual specificity necessary to confer jurisdiction." *Jazini v. Nisson Motor Co., Ltd.*, 148 F.3d 181, 185 (8th Cir. 1998) (finding allegations that merely restated factors considered to determine whether subsidiary's contacts could be imputed to parent corporation could not confer jurisdiction); *see also, e.g., Fitzgerald v. Zakheim & LaVrar, P.A.*, 90 F. Supp. 3d 867, 873 (D. Minn. 2015) ("Plaintiff's jurisdictional arguments set forth in its complaint are mere legal conclusions and, accordingly, are insufficient alone to satisfy its burden of establishing a prima facie case of specific jurisdiction . . . ."). The Court finds no basis to impute HoT's contacts to any of the Thallers.

CHR's arguments to the contrary are unavailing. CHR argues that jurisdiction over the Thallers is proper because "[u]nder Minnesota law, an officer or director is liable for the torts of the corporation or its employees if the officer or director 'participated in, directed, or was negligent in failing to learn of and prevent the tort.'" (CHR Opp. at 12

(quoting *Morgan v. Eaton's Dude Ranch*, 239 N.W.2d 761, 762 (Minn. 1976)).) It contends that because the fiduciary shield doctrine does not apply, HoT's contacts must be imputed to the Thallers. (*See id.* at 13–15.) In so doing, CHR confuses the law governing liability with the law governing personal jurisdiction; they are two distinct inquiries. *See, e.g., Finn*, 2017 WL 1194192, at *8 (acknowledging that "even if [the relevant multi-factor analysis] show[s] a corporation is an alter ego for liability purposes, there must also be an allegation of sufficient minimum contacts to give rise to personal jurisdiction.").[3]

## II.   Jurisdictional Discovery

CHR also seeks discovery to bolster its attempts to establish jurisdiction over the Thallers. "[A] plaintiff may be entitled to 'specifically targeted' jurisdictional discovery, designed 'to flesh out connections [with the forum state] already shown to exist.'" *Viracon, Inc. v. J & L Curtain Wall LLC*, 929 F. Supp. 2d 878, 886 (D. Minn. 2013) (quoting *Bio-Fuels Automation, Inc. v. Kiewit Energy Co.*, No. 10-CV-610, 2010 WL 3023391, at *2 (D. Minn. July 28, 2010)) (alterations in original). As discussed above, CHR has not established any suit-related contacts between the Thallers and Minnesota that may be "fleshed out" by additional discovery. Rather, it seeks "an opportunity to discover which other Minnesota-based companies have transacted business with HoT and the Thallers, and secure the relevant business records, contracts, correspondence, emails, invoices, etc.

---

[3] Since CHR does not meet its burden to show that exercising jurisdiction over the Thallers would be proper, the Court does not reach the Thallers' other arguments for dismissal.

to further support CHR's assertion that the Thallers have had 'continuous and systematic' contacts with the State of Minnesota." (CHR Opp. at 22.)

In these circumstances, the Court concludes that jurisdictional discovery would not be appropriate. First, with respect to general jurisdiction, it is truly speculative that additional discovery would reveal that HoT may be subject to general jurisdiction in Minnesota even though Minnesota has never been its principal place of business or state of incorporation. And "[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 598 (8th Cir. 2011) (quoting *Dever*, 380 F.3d at 1074 n.1) (alteration in original).

Second, with respect to specific jurisdiction, CHR offers no explanation as to the connection between these speculative additional contacts and the claims it asserts against the Thallers. Indeed, due to the nature of the services CHR provided to HoT, the Court expects that CHR has its own records of the identities of the Minnesota-based companies to which it delivered shipments on HoT's behalf. In the Court's view, additional discovery of HoT's contacts with Minnesota-based companies would provide no further basis for jurisdiction over the Thallers, and therefore jurisdictional discovery is not appropriate. *See Viracon*, 929 F. Supp. 2d at 887 (denying jurisdictional discovery where, among other things, discovery sought would not alter court's conclusion that it lacked jurisdiction over the defendants).

### III.    Claims Against HoT

Dismissing the claims asserted against the Thallers leaves only the claims asserted

against HoT. In relevant part, Rule 4(m) of the Federal Rules of Civil Procedure provides:

> If a defendant is not served within 90 days after the complaint is filed, the
> court—on motion or on its own after notice to the plaintiff—must dismiss
> the action without prejudice against that defendant or order that service be
> made within a specified time. But if the plaintiff shows good cause for the
> failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

As of the date of the hearing, more than 90 days had passed since the Thallers

removed this action from state court. HoT has not noticed an appearance and it is unclear

whether it has been served. Within 21 days after the date of the present order, CHR shall

provide proof of service or demonstrate good cause for an extension of time to serve HoT.

If it does not, the action will be subject to dismissal for failure to prosecute.

### CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, the

Thallers' motion to dismiss for lack of personal jurisdiction is GRANTED. Accordingly,

IT IS HEREBY ORDERED THAT:

1. The Thallers' Motion to Dismiss [ECF No. 5] is GRANTED; and

2. Within 21 days of the date of this order, CHR is ORDERED to provide proof of service or demonstrate good cause for an extension of time to serve HoT.

Dated: March 24, 2020

BY THE COURT:

s/Nancy E. Brasel
Nancy E. Brasel
United States District Judge